UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SANTIAGO SERRANO PEREZ,

                    Plaintiff,

          -against-

MESA AZTECA CORP., d/b/a/ MESA
AZTECA and JOAQUIN F.
VELAZQUEZ,

                    Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
23-CV-9374 (HG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Santiago Serrano Perez commenced this action against Defendants Mesa

Azteca Corp., d/b/a Mesa Azteca ("Corporate Defendant"), Joaquin F. Velazquez,

Gustavo Rosas, and Cesar Reyes[1] on December 20, 2023. (Compl., ECF No. 1.) Plaintiff

alleges various claims, including violations of the Fair Labor Standards Act, 29 U.S.C.

§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"), Article 6 Section 190 *et*

*seq.* (*Id.*)

On March 14, 2024, the Clerk of Court certified Defendants' default pursuant to

Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiff subsequently moved for

a default judgment on April 3, 2024. (Clerk's Entry of Default, ECF No. 13; Mot. for

Default J., ECF No. 15.) For the reasons set forth below, this Court recommends that

Plaintiff's motion be granted in part and denied in part.

---

[1] Plaintiff voluntarily dismissed Defendants Gustavo Rosas and Cesar Reyes on June 13, 2024. (Notice of Voluntary Dismissal, ECF No. 22; *see also* June 14, 2024 ECF Order Dismissing Parties.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that Defendants employed him as a delivery worker, dishwasher, and cook from February 2022 through on or about May 5, 2023. (Compl., ECF No. 1, ¶¶ 4, 15.) Plaintiff claims that he was paid $16.00 per hour from approximately February 2022 until in or about April 2022, and $17.00 per hour from approximately May 2022 until on or about May 5, 2023. (*Id.* ¶¶ 43, 44.) Plaintiff also alleges that from February 2022 until on or about August 21, 2022, he worked five days a week for an average of 50 to 54 hours per week, two weeks of the month and six days a week averaging 60 to 70 hours per week for the remainder of the month. (*Id.* ¶ 39.) Plaintiff claims that, from approximately mid-November 2022 until on or about December 25, 2022, he worked three days a week for approximately 25 to 35 hours per week. (*Id.* ¶ 40.) From approximately December 26, 2022, to May 5, 2023, Plaintiff alleges he worked five days a week for an average of 50 to 54 hours per week. (*Id.* ¶ 41.) Plaintiff further alleges that throughout his employment with Defendants, they did not pay him appropriate overtime compensation and instead adjusted his paystubs to reflect inaccurate wages and hours worked. (*Id.* ¶¶ 48, 50.)

According to the complaint, Corporate Defendant was an enterprise engaged in interstate commerce. (*Id.* ¶ 31.) Plaintiff alleges that Defendant Joaquin F. Velazquez is the owner, officer, and/or agent of Defendant Corporation. (*Id.* ¶ 19.)

Plaintiff asserts claims against Defendants for willfully violating the overtime pay provisions of the FLSA and the NYLL, (*id.* ¶¶ 67–68, 71–72); for willfully violating

2

the spread of hours wage order of the NYLL and N.Y.C.R.R., (*id.* ¶¶ 75–76)[2]; for violating the notice and recordkeeping requirements of the NYLL, (*id.* ¶ 79); and for violating the wage statement provisions of the NYLL, (*id.* ¶ 82).

Service was made on Corporate Defendant by serving the New York Secretary of State on December 22, 2023. (*See* Aff. of Service, ECF No. 6.) Service of the summons and complaint upon Defendant Joaquin F. Velazquez was effected by in-person service on a person identified as a coworker of Velazquez, at the location of Corporate Defendant's restaurant, i.e., 91 Wyckoff Avenue, Brooklyn, NY 11237, on January 30, 2024, and by mailing a copy of the summons to Defendant Velazquez to the address of Corporate Defendant on January 31, 2024. (*See* Aff. of Service, ECF No. 10; *see also* Compl., ECF No. 1, ¶¶ 2, 17 (specifying business address of Corporate Defendant as 91 Wyckoff Avenue, Brooklyn, NY 11237).) After Defendants failed to appear, Plaintiff requested a Certificate of Default on March 6, 2024. (Request for Certificate of Default, ECF No. 11.) The Clerk of Court entered default against Defendants on March 14, 2024. (Clerk's Entry of Default, ECF No. 13.)

On April 3, 2024, Plaintiff moved for a default judgment on Plaintiff's overtime compensation and liquidated damages claims under the FLSA and the NYLL, Plaintiff's claims brought under the New York Wage Theft Prevention Act ("WTPA"), and for attorneys' fees and costs. (Mot. for Default J., ECF No. 15; Decl. in Supp. of Mot. for

_____

[2] While the complaint includes a cause of action for failure to pay spread of hours wages, (Compl., ECF No. 1, ¶¶ 10, 74–77), spread of hours violations are not discussed in the default motion paperwork. (Decl. in Supp. of Mot. for Default J., ECF No. 16.) Accordingly, the Court deems that this claim has been abandoned. *Cf. Donohue v. Marsh*, No. 19-CV-207 (RPK) (RML), 2022 WL 4111025, at *8 (E.D.N.Y. Sept. 8, 2022) ("Plaintiff's acknowledgement of all his claims, his specification of the four valid claims, and his defense of those fo[u]r claims alone are sufficient to permit 'a court [to] . . . infer' that the remaining claims have been abandoned." (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

Default J., ECF No. 16.) The Honorable Hector Gonzalez referred the motion to the undersigned magistrate judge on April 4, 2024. (Apr. 4, 2024 ECF Order Referring Mot.) That same day, Plaintiff filed an executed declaration in support of his motion, as the declaration filed in support of the motion for default judgment on April 3, 2024, did not include Plaintiff's signature. (Letter, ECF No. 17; *see* Pl.'s Decl. in Supp. of Mot. for Default J., ECF No. 16-10 (unsigned) & ECF No. 17-1 (signed).) On April 5, 2024, Plaintiff certified that the default motion paperwork was sent to Defendants by mail to the address of Corporate Defendant. (Certificate of Service, ECF No. 18.) On April 19, 2024, the Court scheduled a default hearing for May 16, 2024. (Apr. 19, 2024 ECF Scheduling Order.)

At the default motion hearing on May 16, 2024, Defendants did not appear, and Plaintiff confirmed that the default papers had only been mailed to one address of Corporate Defendant. (May 16, 2024 ECF Min. Entry & Order.) Accordingly, the Court directed Plaintiff to file a status report advising the Court as to their efforts to locate and serve an individual in a position of authority at Corporate Defendant as well as any progress made in determining the home addresses of the Individual Defendants. (*Id.*) Plaintiff was further directed to file a supplemental declaration under E.D.N.Y. Local Civil Rule 55.1, establishing that any Individual Defendant against whom Plaintiff was moving for default was not serving in the military. (*Id.*) On May 28, 2024, Plaintiff's counsel filed a supplemental submission, as well as an affidavit confirming mailing of the default paperwork and the supplemental submission to Defendant Velazquez at his last known residential address. (Status Report, ECF No. 20; Suppl. Decl. in Supp. of Mot. for Default J., ECF No. 20-1 (hereinafter "Suppl. Submission"); Affirmation of Service, ECF No. 21.)

In the supplemental submission, Plaintiff indicated his intention to voluntarily dismiss Defendants Gustavo Rosas and Cesar Reyes. (Status Report, ECF No. 20.) The Court then directed Plaintiff to file a notice of voluntary dismissal and to advise the Court as to his efforts to serve Corporate Defendant by serving an individual in a position of authority. (May 31, 2024 ECF Order.) Plaintiff filed a notice of voluntary dismissal on June 13, 2024, as to Defendants Rosas and Reyes. (Notice of Voluntary Dismissal, ECF No. 22.) Judge Gonzalez dismissed Rosas and Reyes from the case on June 14, 2024. (June 14, 2024 ECF Order Dismissing Parties.) On June 17, 2024, Plaintiff filed another status report advising the Court that he served an individual identified as a manager at Corporate Defendant with the default motion and related paperwork. (*See* Status Report, ECF No. 23; Aff. of Service, ECF No. 24.) The affidavit of service shows that service was made on an individual identified as an authorized agent of Corporate Defendant by in-person service on June 14, 2024. (*See* Aff. of Service, ECF No. 24.) Plaintiff also sent the supplemental affidavit and all documents identified in ECF No. 24 to the last known business address of Corporate Defendant. (*See* Certificate of Service, ECF No. 25.)[3] To date, nobody has appeared for Defendants.

## DISCUSSION

Plaintiff has moved for a default judgment on his claims that Defendants willfully violated (1) the overtime pay provisions of the FLSA and the NYLL, (2) the notice and recordkeeping requirements of the NYLL, and (3) the wage statement

---

[3] The following documents were identified in ECF No. 24: the "supplemental declaration of Jesse Barton, Esq., in support of plaintiff's motion for default judgment, exhibit A, notice of motion for default judgment, complaint, default judgment, [and] exhibits." (Aff. of Service, ECF No. 24.)

provisions of the NYLL. Plaintiff seeks compensatory and liquidated damages under the FLSA and the NYLL, as well as attorneys' fees and costs.

## I.  Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The Plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[4] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

---

[4] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. Specifically, Plaintiff (1) requested a certificate of default largely in accordance with Local Rule 55.1(a) and later represented that Defendant Velazquez was not in active military service as required by Local Rule 55.1(a), (*see* Req. for Certificate of Default, ECF No. 11; Status Report, ECF No. 20); (2) demonstrated that Defendants have failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(a)(2), (*see* Aff. of Service Mesa Azteca, ECF No. 16-2; Aff. of Service Joaquin F. Velazquez, ECF No. 16-5; Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶¶ 5–16); and (3) certified the mailing of Plaintiff's default judgment motion, supporting documents, and supplemental submission to Defendant Velazquez at his last known residential address, and the mailing of the default motion and supporting documents, as well as

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant[s'] liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.,* 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 509 (2d Cir. 1991). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears

---

the "supplemental declaration of Jesse Barton, Esq., in support of plaintiff's motion for default judgment, exhibit A, notice of motion for default judgment, complaint, default judgment, [and] exhibits" to Corporate Defendant at its business address, in accordance with Local Rule 55.2(a)(3), (*see* Affirmation of Service, ECF No. 21; Certificate of Service, ECF No. 25; *see also* Certificate of Service, ECF No. 18).

Although Plaintiff did not submit a memorandum of law "in compliance with Local Rule 7.1(a)(2), the Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with the Local Rules." *See Tr. of Loc. 813 Pension Trust Fund v. Argento Rubbish Removal, Inc.,* No. 22-CV-5683 (FB) (PK), 2023 WL 5961658, at *3 (E.D.N.Y. Aug. 21, 2023) (quotation marks omitted), *report and recommendation adopted*, 2023 WL 5956787 (E.D.N.Y. Sept. 13, 2023). Plaintiff's counsel filed a declaration in support of Plaintiff's default judgment motion that "contains case law and legal analysis that would normally be provided in a Memorandum of Law"; Plaintiff's non-compliance with Local Rule 7.1 is therefore excused. *See id.* at *4.

the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez,* No. 18-CV-6474 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted,* 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

Specific to FLSA cases, "in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.,* No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009), *report and recommendation adopted,* 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009); *see also Chao v. Vidtape, Inc.,* 196 F. Supp. 2d 281, 293 (E.D.N.Y. 2002). Here, Plaintiff seeks compensatory damages and attorneys' fees and costs. (*See* Compl., ECF No. 1, ¶¶ 66–67.) For the following reasons, the Court recommends entry of a default judgment in Plaintiff's favor and an award of damages and interest as detailed below.

## II.  Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil,* 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default

judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil,* 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil,* 10 F.3d at 96. In this case, the court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.,* 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty,* 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g., United States v. DiPaolo,* 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine,* 489 F. Supp. 3d at 81.

Defendants' failure to respond or otherwise appear in this action supports a finding of willfulness. Plaintiff adequately served Corporate Defendant by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. (Aff. of Service, ECF No. 6.) *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Jean-Louis v. Warfield,* 898 F. Supp. 2d 570, 574 (E.D.N.Y. 2012) (explaining that New York law permits service upon a corporation via the New York Secretary of State). Plaintiff served Defendant Velazquez by in-person service on a person identified as a coworker, at the location of Corporate Defendant's restaurant, at 91 Wyckoff Ave., Brooklyn, NY 11237, on January 30, 2024, and by mail to the business address on January 31, 2024. (Aff. of Service, ECF No. 10.) *See* N.Y. C.P.L.R. § 308(2)

(allowing service "to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by . . . mailing the summons to the person to be served . . . at [their] actual place of business").

Defendants failed to answer within 21 days of service. (*See* Affs. of Service, ECF Nos. 6, 10; Entry of Default, ECF No. 13.) Defendants likewise failed to respond after Plaintiff moved for a default judgment and after receiving notice of the motion both from Plaintiff and the Court. (*See* Certificate of Service, ECF No. 18; April 19, 2024 Scheduling Order, ECF No. 19.) In addition, as set forth above, the motion paperwork was formally served on Corporate Defendant on June 14, 2024, and mailed to the business address of Corporate Defendant on July 15, 2024. (Aff. of Service, ECF No. 24; Certificate of Service, ECF No. 25.) Moreover, as set forth above, default paperwork was mailed to the residential address of Defendant Velazquez on May 23, 2024, and July 15, 2024. (Affirmation of Service, ECF No. 21; Certificate of Service, ECF No. 25.) In light of Defendants' failure to respond, despite being provided multiple notices of this proceeding, the Court weighs this factor in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.,* 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v.*

*HDMJ Rest., Inc.,* 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

## C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC,* No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendants' failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders,* 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

## III. Liability and Damages

### A. FLSA Liability

To establish liability under the FLSA, a "plaintiff must prove the following: (1) the defendant is an employer subject to . . . [the] FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . [the] FLSA; and (3) the employment relationship is not exempted from . . . [the] FLSA." *Payamps v. M & M Convenience Deli & Grocery Corp.,* No. 16-CV-4895 (LDH) (SJB), 2018 WL 3742696, at *4 (E.D.N.Y. May 18, 2018).

#### 1. *Employers Subject to the FLSA*

An employer is subject to both the minimum wage and the overtime provisions of the FLSA if (1) their employees are "engaged in commerce," or (2) the employer is an

11

"enterprise engaged in commerce." 29 U.S.C. § 206; *see also Padilla v. Manlapaz,* 643 F. Supp. 2d 298, 299 (E.D.N.Y. 2009). These two methods of establishing FLSA coverage are known as "individual coverage" and "enterprise coverage," respectively. *Jacobs v. N.Y. Foundling Hosp.,* 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007). A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> Has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. §§ 203(s)(1)(A)(i)–(ii). "Commerce" is, in turn, defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

Here, the Court finds that Plaintiff has adequately alleged that Corporate Defendant is an "[e]nterprise engaged in commerce" and therefore subject to the FLSA. 29 U.S.C. § 203(s). Plaintiff alleges that Corporate Defendant is a restaurant and employed him as a delivery worker, dishwasher, and cook and that "Defendants and/or their enterprise were directly engaged in interstate commerce," and that "numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York." (Compl., ECF No. 1, ¶ 31.) Plaintiff further alleges that Corporate Defendant "had a gross annual volume of sales of not less than $500,000." (*Id.* ¶ 30.)

Although Plaintiff's allegations are largely conclusory, courts have noted that "'virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.'" *Archie v. Grand Cent. P'ship, Inc.,* 997 F. Supp. 504, 530 (S.D.N.Y. 1998); *see also Jacobs,* 577 F.3d at 99 n.7. In addition, even "local business

activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Archie,* 997 F. Supp. at 530. Here, the Court may safely infer that such goods were used in the operation of Defendant's restaurant business, Mesa Azteca. (*See* Compl., ECF No. 1, ¶¶ 31, 36). *See Romanowicz,* 577 F.3d at 84 ("In light of [a defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor. . . ."); *Shim v. Millennium Grp.,* No. 08-CV-4022 (FB) (VV), 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (finding that employer was engaged in interstate commerce where it was "simply inconceivable that none of the [goods] used" in its business "originated outside of New York").

Given the nature of Corporate Defendant's business, it is reasonable to infer that the materials used in operating the restaurant were not exclusively sourced in New York. Accordingly, the Court finds that Plaintiff's allegations are sufficient to establish that Corporate Defendant is subject to the FLSA.

With respect to Defendant Velazquez, the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may be liable as an employer under the FLSA so long as he exercises 'operational control' over the employee in question[,] . . . and individuals who are found to be 'employers' under the FLSA may be held jointly and severally liable to the plaintiff." *Saucedo v. On the Spot Audio Corp.,* No. 16-CV-451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016) (citation omitted), *report and recommendation adopted,* 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated by stipulation on other grounds,* 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018). Here, Plaintiff alleges that Defendant Velazquez "determine[d] the wages and compensation of the employees of Defendants, including Plaintiff Serrano, establishe[d] the schedules of the

13

employees, maintain[ed] employee records, and ha[d] the authority to hire and fire employees." (Compl., ECF No. 1, ¶ 19.) Taking these allegations as true in the context of this default, the Court finds that Defendant Velazquez was an employer subject to the FLSA. *See, e.g., Lopez v. Royal Thai Plus, LLC,* No. 16-CV-4028 (NGG) (SJB), 2018 WL 1770660, at *4 n.4 (E.D.N.Y. Feb. 6, 2018), *report and recommendation adopted,* 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).

    2.   *Employees Covered by the FLSA*

Under the FLSA, an "employee" generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see generally id.* § 203(e). "In light of [this] broad definition . . . , the Second Circuit has found allegations which simply 'state where the plaintiffs worked, outline their positions, and provide their dates of employment,' sufficient to support a finding of employee status . . . ." *Suggs v. Crosslands Transp., Inc.,* No. 13-CV-6731 (ARR) (MDG), 2015 WL 1443221, at *3 (E.D.N.Y. Mar. 27, 2015) (quoting *Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 91 (2d Cir. 2013)).

Here, Plaintiff alleges that he "was employed by Defendants at Mesa Azteca" in Brooklyn. (Compl., ECF No. 1, ¶ 15.) "It follows, therefore, that for purposes of this default, [Plaintiff] qualifies as an 'employee' under the FLSA." *Garcia v. Badyna,* No. 13-CV-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also Velu v. Velocity Exp., Inc.,* 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (stating that the "ultimate question is . . . 'whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in business for [himself]'" (alterations in original) (quoting *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.,* 615 F. Supp. 2d 186, 192–93 (S.D.N.Y. 2009))). Taking these allegations as true in the context of this default, the Court finds that Plaintiff was an employee covered by the FLSA. *See id.*

3. *FLSA Exemptions*

Finally, the Court does not find any basis for exempting the employment relationship at issue here from the FLSA's provisions. *See* 29 U.S.C. § 213(a) (setting forth the relevant exemptions). As noted above, Plaintiff alleges that Defendants employed him as a delivery worker, dishwasher, and cook — a class of employment not contemplated by any of the statutory exemptions. (Compl., ECF No. 1, ¶ 35.) *See* 29 U.S.C. § 213(a). For the purposes of this default motion, Plaintiff has therefore adequately alleged facts establishing applicability of the FLSA, as a predicate to his claims under that statute.

**B. Liability Under the NYLL**

To recover under the NYLL, Plaintiff must first "prove that he was an employee and that Defendants were employer[s] as defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.,* 91 F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotation marks omitted) (alteration in original) (citing NYLL § 650 *et seq.;* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2); *see also Lauria v. Heffernan,* 607 F. Supp. 2d 403, 407–08 (E.D.N.Y. 2009). "The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.,* 293 F.R.D. 516, 526 (S.D.N.Y. 2013), *rev'd on other grounds,* 811 F.3d 528 (2d Cir. 2016); *see Ethelberth,* 91 F. Supp. 3d at 360 (explaining that the NYLL's definition of an employer is broader than the FLSA's). Having already found that Plaintiff has sufficiently pleaded that Defendants were employers and that Plaintiff was an employee under the FLSA, the Court finds that Plaintiff has also adequately alleged an employee relationship with Defendants under the NYLL.

**C. Violations of the FLSA and the NYLL**

Having determined Defendants' liability, the Court must now decide whether Plaintiff is entitled to a default judgment and damages. As a preliminary matter, the

Court notes that Plaintiff's claims fall within the relevant statutes of limitation.[5] *See* 29 U.S.C. § 255(a) (two years for ordinary FLSA violations); NYLL § 198(3) (six years).

 1. *Overtime Violation*

 Plaintiff alleges that Defendants violated the FLSA by failing to pay him overtime wages for hours worked in excess of 40 hours per week. (*See* Compl., ECF No. 1, ¶¶ 63–68.) Accepting Plaintiff's factual allegations as true, the Court recommends finding that Defendants' default amounts to an admission of liability for violating the overtime provisions of the FLSA and the NYLL.

 Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . the [FLSA].") Accordingly, to establish liability under the FLSA for an unpaid overtime claim, the "plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013). Plaintiffs must also

---

[5] The Court notes that Plaintiff alleges "willful" violations of the FLSA by Defendants. (Compl., ECF No. 1, ¶¶ 55, 61, 68, 72.) Willful FLSA claims present a higher pleading burden than ordinary FLSA claims but allow plaintiffs to take advantage of a three-year statute of limitations. *See Whiteside v. Hover-Davis, Inc.,* 995 F.3d 315, 320–25 (2d Cir. 2021) (discussing 29 U.S.C. § 255). As stated above, Plaintiff filed his claims within the two-year statute of limitations for ordinary FLSA claims. The Court therefore need not assess whether Plaintiff has adequately established willfulness "as an independent element of [his] claims." *Id.* at 322.

show "that the[ir] employer had actual or constructive knowledge" of their overtime hours. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

From February 2022 to April 2022, Plaintiff alleges he was paid $16.00 per hour, and from May 2022 to May 5, 2023, he alleges he was paid $17.00 per hour. (Compl., ECF No. 1, ¶¶ 43–44.) For any hours worked in excess of 40 per week, Plaintiff claims he was entitled to overtime pay at a rate of $24.00 per hour during the first period ($16.00 x 1.5) and $25.50 per hour during the second period ($17.00 x 1.5). (*Id.* ¶¶ 43–44, 71.)[6] Plaintiff provided a proposed damages calculation in support of his motion, alleging a total wage deficiency of $6,378,00. (*See* Damages Chart, ECF No. 16-11.)

The Court has independently calculated Plaintiff's damages based on the allegations in the complaint and information supplied in Plaintiff's damages chart. The Court's calculation starts with the claims in the complaint, in which Plaintiff details his hours as follows. From February 2022 to on or about August 21, 2022, Plaintiff states that he worked five days per week for two weeks of each month, averaging 50 to 54 hours per week. (Compl., ECF No. 1, ¶ 39.) During the other two weeks of each month in that time period, he claims he worked six days per week, averaging 60 to 70 hours per week. (*Id.*) From mid-November 2022 until on or about December 25, 2022, Plaintiff alleges that he worked three days per week, averaging 25 to 35 hours per week. (*Id.*

---

[6] The Court notes that because Plaintiff worked in the hospitality industry, the Court has considered the applicability of the New York Hospitality Industry Wage Order. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146 *et seq.* The Hospitality Wage Order provides that "[i]f an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id.* § 146-3.5(b). Here, the complaint alleges that Plaintiff was paid at an hourly rate of pay and further alleges his overtime rate; the Court thus relies on Plaintiff's allegations to calculate the wage deficiency. (Compl., ECF No. 1, ¶¶ 43–44.)

¶ 40.) From December 26, 2022, to May 5, 2023, Plaintiff claims he worked five days per week, averaging 50 to 54 hours per week. (*Id.* ¶ 41.) Using the average weekly hours for each of the relevant periods, the Court estimates that Plaintiff is entitled to overtime wages for 234 hours at $24.00 per hour and for 524 hours at $25.50 per hour. This estimate is derived from Plaintiff's claim that he worked specific ranges of hours over two-week periods during the relevant time frames. Specifically, the Court estimates the number of overtime hours worked in each period by taking the mean amount of overtime Plaintiff worked per week and multiplying that number by the number of weeks within the period. For example, for the two-week period between February 1, 2022, and February 14, 2022, Plaintiff alleged he worked, on average, between 50 to 54 hours per week (Compl., ECF No. 1, ¶ 39), or 10 to 14 hours of overtime per week, with a mean of 12 hours per week. The Court thus estimates that Plaintiff worked 24 hours of overtime during that two-week period and so on.

From there, to determine the excess wages owed, the weekly pay Plaintiff received is subtracted from the total amount due per week, with the exception of periods when Plaintiff may have been paid more than the estimates suggest was due.[7]

---

[7] As set forth below, for some periods, Plaintiff appears to have been paid more than the average hours estimates suggest was due, often at the rate of one hour per two-week period. These "overpayments" are represented by negative values in the Total Underpayment column in the chart below. It is unclear whether these payments represent actual compensation for hours worked and paid at a non-overtime rate, spread-of-hours compensation, or another accounting practice. In any event, the Court's damages calculation does not offset Plaintiff's damages from one week by deducting an overage from another week. *See generally Guan v. Long Island Bus. Inst., Inc.*, No. 15-CV-2215 (CBA) (VMS), 2017 WL 11703860, at *5 (E.D.N.Y. Sept. 30, 2017) (declining to offset deficient overtime compensation by overpayments made during a different work week); *cf. Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 21–22 (2d Cir. 2002) (summary order) (rejecting "defendants' argument that their purported 'overpayments' of overtime in certain weeks should offset their liability for other weeks"). As set forth below, the total amount of "overpayments" equals $124.00, which the Court does not deduct from the overall total due to Plaintiff.

Plaintiff provided the amount that he was paid per week in his proposed damages calculation, and those amounts are credited against the total pay due in the chart below. (*See* Damages Chart, ECF No. 16-11; Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶ 45 (describing weekly "credited" pay as "the amount of wages Defendants actually paid" Plaintiff).)

To recap, using the average weekly hours for each of the relevant periods, the Court estimates that Plaintiff is entitled to overtime wages for 234 hours at $24.00 per hour and for 524 hours at $25.50 per hour. As further detailed in the chart below, the Court accordingly finds that Plaintiff is entitled to overtime damages totaling **$6,346.00**. ($35,180.00 in total non-overtime pay owed to Plaintiff + ($24.00 x 234 hours) + ($25.50 x 524 hours)) – $47,936.00 in total credited pay + $124.00 in total "overpayments" = $6,346.00.)

| Period Date Range | Weeks per Period | Rate of Reg. Pay | Reg. Pay per Period (40 hours per week x reg. rate) | OT Rate | OT Hours per Period | OT Pay Due per Period (OT hours x OT rate) | Total Pay Due per Period (Reg. pay + OT pay) | Credited Pay per Period | Total Under-payment per Period |
|---|---|---|---|---|---|---|---|---|---|
| 2/1/22 - 2/14/22 | 2 | $16.00 | $1,280 | $24.00 | 24 | $576 | $1,856 | $1,872.00 | -$16.00 |
| 2/15/22 - 2/28/22 | 2 | $16.00 | $1,280 | $24.00 | 50 | $1,200 | $2,480 | $1,872.00 | $608.00 |
| 3/1/22 - 3/14/22 | 2 | $16.00 | $1,280 | $24.00 | 24 | $576 | $1,856 | $1,872.00 | -$16.00 |
| 3/15/22 - 3/28/22 | 2 | $16.00 | $1,280 | $24.00 | 50 | $1,200 | $2,480 | $1,872.00 | $608.00 |
| 3/29/22 - 4/11/22 | 2 | $16.00 | $1,280 | $24.00 | 24 | $576 | $1,856 | $1,872.00 | -$16.00 |
| 4/12/22 - 4/25/22 | 2 | $16.00 | $1,280 | $24.00 | 50 | $1,200 | $2,480 | $1,872.00 | $608.00 |
| 4/26/22 - 5/2/22 | 1 | $16.00 | $640 | $24.00 | 12 | $288 | $928 | $936.00 | -$8.00 |
| 5/3/22 - 5/9/22 | 1 | $17.00 | $680 | $25.50 | 12 | $306 | $986 | $994.50 | -$8.50 |
| 5/10/22 - 5/23/22 | 2 | $17.00 | $1,360 | $25.50 | 50 | $1,275 | $2,635 | $1,989.00 | $646.00 |
| 5/24/22 - 6/6/22 | 2 | $17.00 | $1,360 | $25.50 | 24 | $612 | $1,972 | $1,989.00 | -$17.00 |
| 6/7/22 - 6/20/22 | 2 | $17.00 | $1,360 | $25.50 | 50 | $1,275 | $2,635 | $1,989.00 | $646.00 |
| 6/21/22 - 7/4/22 | 2 | $17.00 | $1,360 | $25.50 | 24 | $612 | $1,972 | $1,989.00 | -$17.00 |

| Period Date Range | Weeks per Period | Rate of Reg. Pay | Reg. Pay per Period (40 hours per week x reg. rate) | OT Rate | OT Hours per Period | OT Pay Due per Period (OT hours x OT rate) | Total Pay Due per Period (Reg. pay + OT pay) | Credited Pay per Period | Total Under-payment per Period |
|---|---|---|---|---|---|---|---|---|---|
| 7/5/22 - 7/18/22 | 2 | $17.00 | $1,360 | $25.50 | 50 | $1,275 | $2,635 | $1,989.00 | $646.00 |
| 7/19/22 - 8/1/22 | 2 | $17.00 | $1,360 | $25.50 | 24 | $612 | $1,972 | $1,989.00 | -$17.00 |
| 8/2/22 - 8/15/22 | 2 | $17.00 | $1,360 | $25.50 | 50 | $1,275 | $2,635 | $1,989.00 | $646.00 |
| 8/16/22 - 8/22/22 | 1 | $17.00 | $680 | $25.50 | 12 | $306 | $986 | $994.50 | -$8.50 |
| 8/23/22 - 11/12/22[8] | 12 | n/a | n/a | n/a | n/a | n/a | n/a | n/a | n/a |
| 11/13/22 – 12/24/22[9] | 6 | $17.00 | $3,060 | $25.50 | 0 | $0.00 | $3,060 | $3,060.00 | $0.00 |
| 12/25/22 – 5/5/23[10] | 19 | $17.00 | $12,920 | $25.50 | 228 (12 hours per week) | $5,814 | $18,734 | $16,796.00 | $1,938.00 |
| **Sub-Totals** | | | $35,180 | | | $18,978 | $54,158 | $47,936 | $6,222.00 |
| **Total = Total Pay Due ($54,158.00) – Credited Pay ($47,936.00) + $124.00 "overpayment"** | | | | | | | | | **$6,346.00** |

---

[8] Plaintiff did not allege unpaid overtime wages for the period between August 22, 2022, and mid-November 2022.

[9] Plaintiff alleged that he worked an average of 30 hours per week during this period. (*See* Compl., ECF No. 1, ¶ 40; Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶ 54.) As he did not work any overtime, he is not entitled to any overtime pay for this period. Additionally, Plaintiff alleged in his motion for default judgment that this period occurred "[f]rom approximately mid-November 2022 until on or about December 25, 2022." (Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶ 29.) While Plaintiff uses November 15, 2022, as the starting date for this period in his damages calculation (*see* Damages Chart, ECF No. 16-11), the November 13, 2022 date is used here instead to keep each week whole. The date adjustment has no material impact on the damages calculation.

[10] Plaintiff alleges that he worked 50 to 54 hours per week "[f]rom approximately December 26, 2022, until on or about May 5, 2023." (Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶ 30; Damages Chart, ECF No. 16-11.) The December 25, 2022 date is used here instead to keep each week whole. As set forth above, the Court estimates the average overtime per week at 12 hours, resulting in 228 hours worked during this period. (12 x 19 = 228.) Starting the pay period one day before Plaintiff's estimate to keep the week whole has no material impact on the damages calculation.

2. *New York Wage Theft Prevention Act Violations*

a. Wage Theft Prevention Act

Plaintiff further requests a default judgment with respect to Defendants' alleged violations of the NYLL's wage notice and statement requirements, which were codified as part of the WTPA. *See* NYLL §§ 195, 195-3. Under these provisions, an employer must provide its employees:

> (1) A notice at the time of hiring "in writing in English and in the language identified by each employee as the primary language of such employee" containing specific information, including, *inter alia,* the rate of pay and basis thereof, the method of payment, allowances claimed as part of the minimum wage, the regular pay day, and the identity of the employer; and (2) statements with every payment of wages listing specific information, including, *inter alia,* the dates of work covered by that payment of wages, the name, address and phone number of employer, rate of pay and basis thereof, gross wages, deductions, any allowances claimed as part of the minimum wage, and net wage.

*Imbarrato v. Banta Mgmt. Servs. Inc.*, No. 18-CV-5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020) (footnote omitted) (quoting NYLL § 195(1), (3)). An employer who fails to provide the required notices and statements is liable for statutory damages. *See* NYLL §§ 198(1-b), (1-d).

b. Article III Standing

A plaintiff must establish Article III standing with respect to each claim alleged and cannot rely on a district court's supplemental jurisdiction over state-law claims to do so. *See Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300, 302, 304 (2d Cir. 2024) (analyzing Article III standing in the context of NYLL wage notice and statement claims). "The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Off. of Comptroller of Currency,* 999 F.3d 130, 141 (2d Cir. 2021)

(alteration in original) (quoting *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016)). These requirements are "an indispensable part of [a] plaintiff's case" and must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). "At the default judgment stage, as at the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennessy ex rel. Hennessy v. Poetica Coffee Inc.,* No. 21-CV-5063 (KAM) (RML), 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68, 75 (2d Cir. 2022)).

Importantly, "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006). This includes any state law claim filed in federal court pursuant to the court's supplemental jurisdiction. In other words, the court cannot "exercise supplemental jurisdiction over a [state law] claim that does not itself satisfy [the] elements of the Article III inquiry." *Id.* at 335; *see Sharehold Representative Servs. LLC v. Sandoz Inc.,* No. 12-CV-6154 (DLC), 2013 WL 4015901, at *7 (S.D.N.Y. Aug. 7, 2013) ("The fact that the claims arise from a common set of facts does not relieve the plaintiff of its obligation to demonstrate constitutional standing to sue for each one."); *see also Guthrie,* 113 F.4th at 304 (finding that supplemental jurisdiction does not excuse a plaintiff from needing to demonstrate standing for a state law statutory damages claim); *Deng v. Frequency Elecs., Inc.,* 640 F. Supp. 3d 255, 264–67 (E.D.N.Y. 2022) (concluding that NYLL § 195 creates distinct causes of action for wage notice and statement claims, that Article III standing is required for each, and that the court lacked subject matter jurisdiction over the claims).

The Supreme Court has also "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person

a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez,* 594 U.S. 413, 414 (2021) (quoting *Spokeo,* 578 U.S. at 341). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original). In the context of claims brought under the WTPA, the alleged concrete injury-in-fact must "result[] from the failure to provide the wage notices and wage statements to maintain a claim for statutory damages under New York Labor Law § 195." *Guthrie,* 113 F.4th at 302–03. Without a concrete injury fairly traceable to the alleged statutory violation, a plaintiff lacks Article III standing, and, in turn, the district court cannot enter a default judgment with respect to the corresponding statutory cause of action. *See, e.g.*, *Sevilla v. House of Salads One LLC,* No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022).

Here, although Plaintiff alleges that Defendants failed to provide the required wage notices and statements, he has not articulated any concrete injury-in-fact resulting from this failure. (Compl., ECF No. 1, ¶¶ 78–80, 81–83.) Plaintiff does not allege any injuries that flowed from Defendants' purported WTPA violations; he only alleges that he was not provided wage notices and wage statements, and that such failure violated the law. (*Id.*) Absent any allegation of facts that detail how Plaintiff was harmed, or how his harm was fairly traceable to Defendants' failure to provide wage notices and statements, Plaintiff has failed to plead "facts that affirmatively and plausibly suggest that [he] has standing" with respect to his wage notice and statement claims. *Hennessy,* 2022 WL 409557, at *2 (quotation marks omitted); *see Soule ex rel. Stanescu v. Conn. Assoc. of Schs., Inc.,* 57 F.4th 43, 50 (2d Cir. 2022) ("[C]ourts 'need not credit a complaint's conclusory statements without reference to its factual context.'" (quoting *Conn. Parents Union v. Russell-Tucker,* 8 F.4th 167, 172 (2d Cir. 2021)); *see also Bell Atl. Corp. v. Twombly,*

550 U.S. 544, 570 (2007) (requiring that plaintiff's allegations "nudge[] their claims across the line from conceivable to plausible").

Accordingly, the Court finds that as presently pleaded, Plaintiff has failed to state facts from which to plausibly infer that he suffered a concrete injury under Article III as to his WTPA claims. *See Guthrie*, 113 F.4th at 310. Therefore, the Court respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims without prejudice, for lack of Article III jurisdiction. *See, e.g.*, *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053 (LDH) (TAM), 2023 WL 9603828, at *12 (E.D.N.Y. Dec. 27, 2023), *report and recommendation adopted*, Jan. 30, 2024 ECF Order Adopting R. & R.; *Neor v. Acacia Network, Inc.*, No. 22-CV-4814 (ER), 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023); *Sevilla*, 2022 WL 954740, at *7; *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417 (JLS) (MJR), 2022 WL 5039391, at *7–9 (W.D.N.Y. Sept. 29, 2022); *Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 339–41 (S.D.N.Y. 2022).

### D.  Liquidated Damages and Interest

1.  *Liquidated Damages*

Under the FLSA, an employee is entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation" and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employee is also entitled to recover liquidated damages under the NYLL. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689 (LLS) (FM), 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), *report and recommendation adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). Because plaintiffs cannot obtain a double recovery, courts award liquidated damages for unpaid wages under *either* the FLSA or the NYLL, whichever provides for

a greater recovery. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same court of conduct."); *see, e.g.*, *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). Under these provisions, the Court recommends an award of liquidated damages equivalent to Plaintiff's compensatory damages under the NYLL, i.e., **$6,346.00**.

2. *Prejudgment Interest*

As to Plaintiff's request for prejudgment interest, "'[i]t is well settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015) (alteration in original) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988) (per curiam)). Because FLSA liquidated damages are intended to be compensatory and not punitive, prejudgment interest is not needed to restore plaintiffs to a position they would have been in absent the wage-protection violation. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015); *see also Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942).

In contrast to the FLSA, the NYLL permits the award of both liquidated damages and prejudgment interest. *Begum*, 2015 WL 223780, at *3. This is because New York state law views liquidated damages as punitive, not compensatory; prejudgment interest is thus not considered a duplicative damages award. *See Janus v. Regalis Constr., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8–9 (E.D.N.Y. July 23, 2012) (explaining that liquidated damages under the NYLL are "punitive in purpose"), *report and recommendation adopted*, 2012 WL 3877962 (E.D.N.Y. Sept. 4, 2012).

The availability of both liquidated damages and prejudgment interest under the NYLL "remains true even where liability is found not only under the NYLL but also under the FLSA." *Begum,* 2015 WL 223780, at *3 (citing *Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n.7 (2d Cir. 2011)). Prejudgment interest is calculated "on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. E. Manor USA Inc.,* No. 10-CV-4313 (NG) (SMG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013), *report and recommendation adopted,* 2013 WL 2152176 (E.D.N.Y. May 17, 2013). Here, since Plaintiff is entitled to an equivalent award of compensatory overtime damages under either the NYLL or the FLSA, the Court finds that Plaintiff is entitled to prejudgment interest.

The statutory rate of interest in New York is nine percent per annum. N.Y. C.P.L.R. § 5004. Where damages were incurred at various times, interest may be calculated from a "single reasonable intermediate date." *Id.* § 5001(b). The midpoint of a plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Fermin,* 93 F. Supp. 3d at 49 (collecting cases); *see Ying Ying Dai v. ABNS NY Inc.,* 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos v. Quentin Market Corp.,* No. 16-CV-5303 (DLI) (RER), 2018 WL 9945754, at *8 (E.D.N.Y. Oct. 17, 2018) (citing *Fermin,* 93 F. Supp. 3d at 49), *report and recommendation adopted,* Mar. 31, 2019 ECF Order Adopting R. & R. Under this approach, interest is to be accrued at the simple rate, from "[the] midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013).

Here, given that the relevant dates of Plaintiff's employment are February 2022 to May 5, 2023, the midpoint of Plaintiff's employment by Defendant was

approximately September 18, 2022. (*See* Compl., ECF No. 1, ¶ 15.) Accordingly, the Court recommends that prejudgment interest be awarded under the NYLL on Plaintiff's compensatory damages award of $6,346.00 from September 18, 2022, to the date judgment is entered at a per diem interest rate of **$1.56** ($6,346.00 x 0.09 / 365).

3. *Post-Judgment Interest*

Plaintiffs are also generally entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "'from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment.'" *Guauque Castiblanco v. Don Alex Peru, Inc.*, No. 20-CV-2235 (MKB) (RML), 2021 WL 4755701, at *8 (E.D.N.Y. Aug. 20, 2021) (alteration in original). In *Fermin*, the court awarded post-judgment interest on all sums awarded pursuant to the plaintiffs' FLSA and NYLL wage-and-hour claims. *Fermin*, 93 F. Supp. 3d at 53. The same approach is appropriate here. The Court therefore respectfully recommends an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C § 1961(a).

**E. Attorneys' Fees and Costs**

The FLSA and the NYLL allow for prevailing plaintiffs to recover reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL § 663(4). Plaintiff requests $2,693.75 in attorneys' fees and $680.00 in costs. (Proposed Order of Default J., ECF No. 16-13, at 1.) Courts "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century*

*21 Real Estate LLC v. Bercosa Corp.,* 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation marks and citation omitted).

    1.  *Attorneys' Fees*

The Court has "broad discretion to determine the amount of attorneys' fees awarded." *Chen v. Oceanica Chinese Rest., Inc.,* No. 13-CV-4623 (NGG) (PK), 2023 WL 2815742, at *18 (E.D.N.Y. Feb. 28, 2023), *report and recommendation adopted,* 2023 WL 2583856 (E.D.N.Y. Mar. 21, 2023). In the Second Circuit, district courts may use the lodestar to determine a "'presumptively reasonable fee.'" *Millea v. Metro-North R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011). Courts calculating the lodestar multiply "the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate." *Rotthoff v. N.Y. State Cath. Health Plan, Inc.,* No. 19-CV-4027 (AMD) (CLP), 2021 WL 1310220, at *3 (E.D.N.Y. Apr. 8, 2021).

In determining a reasonable number of hours, "[t]he relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992). Courts "must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Hernandez v. Quality Blacktop Servs., Inc.,* No. 18-CV-4862 (RJD) (RML), 2021 WL 1413246, at *11 (E.D.N.Y. Mar. 10, 2021) (quoting *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012)).

Courts in this circuit determine a reasonable hourly rate "us[ing] the prevailing hourly rates in the district in which they sit." *Cortes v. Juquila Mexican Cuisine Corp.,* No. 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021). In FLSA cases, recent decisions within the Eastern District of New York approved hourly rates of $300

to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior or more inexperienced associates, and $70 to $100 for paralegals. *See, e.g.*, *Jimenez v. Green Olive Inc.*, ___ F. Supp. 3d ___, No. 23-CV-8805 (AMD) (JAM), 2024 WL 3763467, at *23 (E.D.N.Y. Aug. 13, 2024); *Gao v. Jian Song Shi*, No. 18-CV-2708 (ARR) (LB), 2021 WL 1949275, at *17 (E.D.N.Y. Apr. 30, 2021) (collecting cases), *report and recommendation adopted sub nom. Bin Gao v. ABC Corp.*, 2021 WL 1946322 (E.D.N.Y. May 15, 2021).

Jesse Barton, Plaintiff's counsel, submitted billing records reflecting a total of 13.31 hours worked by himself, his co-counsel Ms. Catalina Sojo, and the firm's paralegals on this matter. (Att'ys Fees, ECF No. 16-12.) Based on the submitted records, the Court finds that the total number of hours and the requested rates are reasonable. Specifically, Mr. Barton requests an hourly rate of $375 for his work, $350 for Ms. Sojo, and $125 for support staff. (Decl. in Supp. of Mot. for Default J., ECF No. 16, ¶ 65.) Mr. Barton is of counsel at CSM Legal and graduated from law school in 2012. (*Id.*) Ms. Sojo is the Managing Member of CSM Legal and received her L.L.M. in 2019. (*Id.*) The billing records submitted indicate that Mr. Barton billed 2.5 hours on this matter, Ms. Sojo billed 1.8 hours, and support staff billed 9.01 hours. (Att'ys Fees, ECF No. 16-12.) The rates billed by Mr. Barton and Ms. Sojo fall within the regularly approved hourly rates for partners on FLSA cases and the number of hours worked is entirely reasonable given the procedural history of this case. Although the requested rate of $125 for paralegal services is somewhat higher than the paralegal rate typically awarded in this district, it is not inconsistent with prior awards. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 WL 136643, at *2 (E.D.N.Y. Jan. 13, 2020) (approving paralegal hourly rates of $125 to $175 but noting the top-billed paralegal had specialized skills and advanced training). Overall, the Court concludes that the hourly rates and fee requested in this case are reasonable in light of the amount of work performed and the

outcome achieved. *See Muratov v. Mama Shnitzel, Inc.*, No. 22-CV-3785 (HG) (TAM), 2023 WL 5152511, at *12 (E.D.N.Y. July 21, 2023), *report and recommendation adopted*, Aug. 29, 2023 ECF Order Adopting R. & R. (approving a fee of $4,712.50 in an FLSA default case); *Fermin*, 93 F. Supp. 3d at 52 (approving a fee of $7,700.00 in an FLSA default case).

For all these reasons, the Court concludes that awarding counsel $2,693.75 in fees is reasonable and recommends that Plaintiff's fee request be granted.

2. *Costs*

Plaintiff seeks $680.00 in costs. (Decl. in Supp. of Mot. for Default J., ECF No. 16 ¶ 64; Att'ys Fees, ECF No. 16-12, at ECF p. 2.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." *Pichardo v. El Mismo Rincon Latino Corp.*, No. 17-CV-7439 (FB) (SJB), 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotation marks and modification omitted), *report and recommendation adopted*, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018). Plaintiff seeks to recover $405.00 for the filing fee and $275.00 for service costs. (Att'ys Fees, ECF No. 16-12, at ECF p. 2.) The Court may take judicial notice of the $405.00 filing fee. However, Plaintiff has not submitted supporting documentation for the entirety of the remaining $275.00 in service costs. Plaintiff has submitted sufficient documentation for a $40.00 fee paid to the Secretary of State for service of process (*see* Aff. of Service, ECF No. 16-2), but has not submitted the requisite documentary evidence for the other service costs. Without supporting documentation, such as billing records or receipts, denial of the remaining costs is warranted. *Mulligan Funding LLC v. Tommy Interior Contracting Group*, No. 23-CV-8808 (RER) (JAM), 2024 WL 3513456, at *11 (E.D.N.Y. July 23, 2024). Therefore, the Court recommends that Plaintiff be awarded costs of $445.00 based on the filing fee and service costs paid to the Secretary of State.

## CONCLUSION

For the foregoing reasons, the Court recommends finding that entry of default is warranted and that, under the default judgment standard, Plaintiff has established that Defendants violated the FLSA and the NYLL with respect to Plaintiff's overtime claims. The Court further respectfully recommends dismissal of Plaintiff's NYLL wage notice and statement claims without prejudice for lack of Article III standing.

Accordingly, the Court respectfully recommends that Plaintiff's motion be granted in part and that a default judgment be entered against Defendants Mesa Azteca Corp. and Joaquin F. Velazquez. With respect to damages, the Court recommends that Plaintiff be awarded a sum of **$12,692.00**, comprised of **$6,346.00** in compensatory damages and **$6,346.00** in liquidated damages. The Court further recommends that Plaintiff be awarded **$3,138.75**, comprised of **$2,693.75** in attorneys' fees and **$445.00** in costs. In addition, the Court recommends (1) an award of prejudgment interest on Plaintiff's unpaid overtime wages at a per diem interest rate of **$1.56** from September 18, 2022, to the date final judgment is entered; and (2) an award of post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate established by 28 U.S.C § 1961(a). Finally, the Court recommends that Plaintiff be awarded a fifteen-percent increase in

damages under the NYLL, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal.[11]

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically and a copy will be sent by mail to Defendants Mesa Azteca Corp. and Joaquin F. Velazquez. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same on ECF by December 12, 2024. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Hector Gonzalez at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v.*

---

[11] The New York Labor Law provides that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4); *see also Rodriguez v. Solares Corp.,* No. 16-CV-3922 (CBA) (SMG), 2019 WL 7252949, at \*12 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted,* 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). The increase applies only to damages awarded under state law. *See Rodriguez,* 2018 WL 7252949, at \*12 (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.,* No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at \*13 (E.D.N.Y. May 11, 2021) (citing *Rodriguez* and limiting conditional fifteen percent increase to damages awarded under the NYLL), *report and recommendation adopted,* 2021 WL 2223275 (E.D.N.Y. June 2, 2021). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent for any amounts unpaid after ninety days following the issuance of judgment or the expiration of the time to appeal. *See Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.,* No. 16-CV-1907 (ENV) (RML), 2017 WL 7625319, at \*7 (E.D.N.Y. Nov. 7, 2017) (finding that the total amount of the judgment would automatically increase if any amount remained unpaid upon the expiration of ninety days following issuance of the judgment).

*Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

       **SO ORDERED.**

Dated:  Brooklyn, New York
       December 5, 2024

                                   *Taryn A. Merkl*

                          TARYN A. MERKL
                          UNITED STATES MAGISTRATE JUDGE